IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JAMES HENRY KNIGHT,
      Petitioner,

vs.                               Case No. 3:07cv545/RV/EMT

WALTER A. McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 26). Petitioner filed a reply (Doc. 29).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 26, Exhibits).[1] Petitioner was charged by information in the Circuit Court for Escambia County, Florida, Case No. 04-5359, with one felony count of possession of a controlled substance (cocaine) and one misdemeanor count of resisting an officer without

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 26).

violence (Ex. A at 5–6).  These charges were also the basis of violation of probation (VOP) proceedings in Case Nos. 02-0460, 02-0071, and 02-0072 (*id.* at 36–37).  Petitioner's appointed counsel filed a motion to suppress on the ground that the arresting officer improperly detained and searched Petitioner, which resulted in the officer's discovering cocaine in Petitioner's pocket and caused Petitioner to flee (*id.* at 105–15).  A hearing on the motion to suppress was held on April 12, 2005 (*id.* at 43–97).  The trial court found that the arresting officer, Matthew Coverdale, legally stopped Petitioner's car and detained and searched him (*id.* at 92–95).  Therefore, the court denied the motion to suppress (*id.* at 95)

At a hearing on June 22, 2005, Petitioner's counsel indicated Petitioner wished to enter a plea of nolo contendere to the two charges in Case No. 04-5359, which also formed the basis for the VOP in Case Nos. 02-0460, 02-0071, and 02-0072 (Ex. A at 118–20, 126).  However, counsel advised the court that Petitioner wished to present additional argument on the suppression issue (*id.* at 120).  Petitioner and defense counsel then presented additional argument, to which the State responded (*id.* at 120–25).  The court considered the argument as an amended motion to suppress and denied it (*id.* at 125–26).  The court conducted a plea colloquy, during which the court inquired of Petitioner whether he was satisfied with the services of counsel, to which Petitioner responded he was not (*id.* at 128–30).  The court then conducted an inquiry, as required by <u>Nelson v. State</u>, 274 So. 2d 256, 258– 59 (Fla. 4th DCA 1973), *cited with approval in* <u>Hardwick v. State</u>, 521 So. 2d 1071, 1074 (Fla. 1988).[2]  The court determined that there was no reasonable basis for a finding of ineffective representation by defense counsel and asked Petitioner whether he wished to proceed

---

[2] In <u>Nelson</u>, the Florida Fourth District Court of Appeal articulated a procedure to be followed when a defendant makes it appear to the trial judge that he desires to discharge his court-appointed counsel.  274 So. 2d at 258.  The court held that the trial judge should make in inquiry of the defendant as to the reason for the request to discharge:

> If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether . . . there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.  If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense.  If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.

*Id.* at 258–59.

with counsel or represent himself (*id.* at 130–34).  Petitioner stated he wished to proceed with counsel (*id.* at 135, 136), and the court continued with the plea colloquy (*id.* at 137–38).  Petitioner entered a nolo contendere plea; the court adjudicated him guilty and sentenced him to ninety-six (96) months of imprisonment on the three VOP's (Case Nos. 02-0460, 02-0071, and 02-0072), with credit for forty (40) months, and a concurrent term of sixty (60) months of imprisonment on the possession of cocaine count in Case No. 04-5359, with 212 days of pre-sentence jail credit (*id.* at 138, 144–45).  Petitioner was sentenced to time served on the misdemeanor count in Case No. 04-5359 (*id.* at 145).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), raising only the suppression issue (Ex. B).  On March 30, 2006, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing April 17, 2006 (Exs. D, E).  Knight v. State, 925 So. 2d 1033 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On November 17, 2006, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F at 1–48).  He subsequently supplemented the motion with an additional claim (*id.* at 49–58).  The trial court denied the motion in a written opinion rendered on April 10, 2007 (*id.* at 59–176).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on September 26, 2007, with the mandate issuing November 19, 2007 (*see* Ex. I).  Knight v. State, 967 So. 2d 202 (Fla. 1st DCA 2007) (Table).

Petitioner filed the instant federal habeas action on December 20, 2007 (Doc. 1 at 7).  Respondent concedes that the petition is timely (Doc. 26 at 3–4).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L.

Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    <u>Ground One: "Ineffective assistance of trial counsel—trial counsel failed to conduct an adequate pre-trial investigation of illegal and invalid evidence."</u>

Petitioner contends defense counsel failed to investigate whether the police officer who stopped and arrested him issued any traffic citations related to the stop (Doc. 1 at 4). Petitioner states counsel informed him prior to the suppression hearing that the officer did not issue any citations; however, the officer testified at the suppression hearing that he issued two citations (*id.*). Petitioner further states counsel advised him prior to the hearing that if the arresting officer testified that he issued any citations, counsel would challenge the validity of the citation(s), but counsel failed to do so (*id.*). Petitioner states if counsel had investigated, counsel would have learned that the officer issued two citations and could have challenged the validity of the citations at the suppression hearing, which would have changed the outcome of the hearing (*id.*).

Respondent concedes that Petitioner exhausted this claim in state court by presenting it in his Rule 3.850 motion and appealing the trial court's decision denying the claim (Doc. 26 at 6). Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Supreme Court law (*id.* at 6–11).

1.    Clearly Established Supreme Court Law

To establish a constitutional claim of ineffective assistance, a petitioner must demonstrate (1) his counsel's performance was below an objective and reasonable professional norm, and (2) he was prejudiced by this inadequacy. <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The petitioner must provide factual support for his contentions. Bare, conclusory allegations regarding counsel's performance and its prejudicial effect are insufficient. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987); <u>Tejada v. Dugger</u>, 941 F.2d

1551, 1559 (11th Cir. 1991). In applying Strickland, the court may resolve the claim if the petitioner fails to carry his burden of proof on either of the two prongs. *Id.* at 697.

In evaluating counsel's performance, the court must consider counsel's performance in light of all of the circumstances at that time and indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that "petitioner was not entitled to error-free representation"). To show counsel's performance was unreasonable, the petitioner must establish "no competent counsel would have taken the action that his counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis in original). In evaluating the reasonable of counsel's actions, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To establish the prejudice prong, the petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693; Johnson v. Alabama, 256 F.3d 1156, 1177 (11th. Cir. 2001). Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue One in his Rule 3.850 motion (Ex. F at 2–5). He asserted that Officer Coverdale wrote two traffic citations on November 23, 2004, the date Coverdale stopped, searched, and arrested Petitioner, but Coverdale failed to deliver a copy of the citations to Petitioner and failed to timely file them with the court; therefore, the citations were illegal and invalid under Florida law (Ex. F at 2–4; Ex. A at 147–48). Petitioner stated if counsel had discovered the citations and challenged their validity, the citations would have been deemed invalid (Ex. F at 4). In support of this contention, Petitioner submitted an order of the traffic court, dated August 14, 2006, granting his motion to dismiss the citations (Petitioner filed the motion to dismiss on July 7, 2006) (Ex. F at 4, 26–39). Petitioner argued that if counsel had challenged the validity

of the citations, the trial court would have granted the motion to suppress on the ground that the traffic stop was illegal (Ex. F at 4–5).

The state court found as fact that according to the testimony elicited at the suppression hearing held April 12, 2005 (hereinafter referred to as the "initial" suppression hearing), Petitioner was stopped by law enforcement officers for two reasons; first, his tag was obscured, and second, he failed to yield to a pedestrian in a crosswalk (*id.* at 61). The court found that the officers testified that after they stopped Petitioner's vehicle, they were able to ascertain the tag number under a bright light at a local gas station (*id.* at 61–62). The court found that the officer who initiated the stop testified that he approached the vehicle and observed an open container of an alcoholic beverage in plain view inside the vehicle's cabin (*id.* at 62). The court also found that the trial court determined that the officer sought permission to search the vehicle as well as Petitioner's person, and Petitioner consented (*id.* at 62).[4] The court further found that the officer testified that in the process of searching Petitioner's person, he found cocaine in Petitioner's pocket; and upon removing the illegal substance from Petitioner's pocket, Petitioner ran away from the officer (*id.*). The court found that the evidence at the initial suppression hearing showed that Petitioner was apprehended shortly thereafter and subsequently charged with the counts alleged in Case No. 04-05359 (possession of cocaine and resisting an officer without violence) (*id.*). The post-conviction court additionally found that Petitioner raised the issue of the validity of the traffic citations at his plea and sentencing hearing (more specifically, the court found that Petitioner's counsel submitted Petitioner's arguments with regard to the validity of the citations as an amended motion to suppress), but the trial court denied the amended motion (*id.* at 63).

The state post-conviction court determined that regardless of the ultimate validity of the traffic citations, the evidence adduced at the initial suppression hearing established that the officers had sufficient cause to stop Petitioner's vehicle (*id.*). Therefore, the court concluded, Petitioner

---

[4] The state court noted that in the post-conviction order, it was reciting as evidence the evidence deemed credible by the trial court at the suppression hearing, noting that Petitioner's and the officers' versions of events greatly differed with regard to the consent issue, and that the trial court did not accept Petitioner's version of events as true (at the suppression hearing, Petitioner testified that he consented only to a "pat down" search and not a full search of his person, and he testified that he ran from the arresting officer when the officer began to reach into Petitioner's pocket, because he did not give the officer permission to conduct more than a "pat down") (Ex. F at 62 n.5).

failed to demonstrate that counsel's failure to investigate the validity of the citations constituted deficient performance, or that he was prejudiced by counsel's alleged error (*id.*).

Petitioner has failed to produce clear and convincing evidence to rebut the state court's factual findings with respect to the testimony adduced at the initial suppression hearing and the subsequent plea and sentencing hearing.  Furthermore, those findings are supported by the transcripts of those hearings, attached to the post-conviction court's written decision (Ex. F at 81–164).  Additionally, determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses.[5]  *See* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Therefore, the state court's findings of fact and credibility determinations are entitled to a presumption of correctness under the AEDPA.

Additionally, the state court's written opinion identified the Strickland standard as the applicable standard for evaluating claims of ineffective assistance of counsel (*id.* at 59–61).  Because the state court applied the correct Supreme Court precedent, and the Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by

---

[5] The same judge presided at the suppression hearing, the plea and sentencing hearing, and during the post-conviction proceedings (*see* Ex. A at 43–96, 118–45, Ex. F at 59–68)

the state court, Petitioner is entitled to federal habeas relief only if he establishes the state court decision was an unreasonable application of Strickland.

Upon review of the record, the undersigned concludes that Petitioner failed to demonstrate he was prejudiced by counsel's failure to investigate the traffic citations in preparation for the initial suppression hearing. Even if—during the initial suppression hearing—counsel had successfully challenged the validity of the citations on the grounds that the officer failed to properly deliver them to Petitioner on the night they were issued and failed to timely file them in court, the fact that the citations were legally invalid would not have affected the trial court's determination that the officers had legally sufficient grounds to stop Petitioner's vehicle and detain and search him. Officer Coverdale testified that at approximately 2:07 a.m. on November 23, 2004, he was driving behind Petitioner's vehicle and observed that the tag was not displayed in a visible manner, and Petitioner failed to yield to a pedestrian in a crosswalk (Ex. A at 50–52, 56–58). Officer Coverdale testified that he initiated a traffic stop, and Petitioner stopped his vehicle at a Circle K convenience store (*id.* at 51). Coverdale testified that he approached Petitioner's vehicle with the intent of citing him for the two traffic violations, and as he approached, he was able to see the tag number under the lights of the convenience store (*id.* at 52, 59–60). He testified that he continued to approach the vehicle to speak with Petitioner, and upon arriving at the vehicle, he observed an open beer container and "a couple of others" (*id.* at 51–52). Officer Coverdale testified that he asked Petitioner for consent to search the vehicle, and Petitioner agreed (*id.* at 53, 60). Coverdale testified that Petitioner stepped out of the vehicle, and Coverdale asked him for consent to search his person, to which Petitioner also agreed (*id.* at 53, 60–61). Coverdale testified that he reached into the left pocket of Petitioner's pants and discovered several rocks of crack cocaine (*id.*). He testified that Petitioner then knocked the cocaine out of his hand and ran from him (*id.*). Coverdale testified that he pursued Petitioner across Cervantes Street and caught up to him at Cervantes and "N" Streets, where he apprehended him and placed him under arrest (*id.*). He then took Petitioner back to the vehicles and conducted a field test of the rocks he found in Petitioner's pants (*id.* at 54). The field test indicated that the substance was crack cocaine (*id.*). During cross-examination by defense counsel, Officer Coverdale testified that he cited Petitioner for two traffic infractions that evening, citation numbers 1269-DUK and 1270-DUK (*id.* at 58, 61–63).

Officer Bruce Martin testified that he was working with Officer Coverdale as his training officer on November 23, 2004 (*id.* at 64–65). He testified that he remained in the patrol car during the traffic stop (*id.* at 66). He observed Officer Coverdale approach Petitioner's vehicle and converse with him (*id.* at 66). He then saw Petitioner exit his vehicle (*id.*). Officer Martin testified that when Coverdale pulled something out of Petitioner's pocket, Coverdale looked to him (Martin), so he (Martin) began to exit the patrol car (*id.* at 66–67). Martin testified that Petitioner took off running while he was exiting the patrol (*id.* at 67). He testified that Petitioner ran across Cervantes Street southbound toward "N" Street (*id.*). Officer Martin testified that he recovered the items that Petitioner knocked out of Coverdale's hand (*id.*). He testified that the substance was field tested and tested positive for cocaine (*id.*). On cross-examination, Office Martin testified that he observed two traffic infractions which led to the traffic stop (*id.* at 69). He testified that the tag was placed in the back window of Petitioner's vehicle, but the window was so darkly tinted that the tag number was indecipherable (*id.*). He further testified that Petitioner drove into a crosswalk where a pedestrian was crossing with a permitted signal (a white "walk" indicator) and cut off the pedestrian (*id.* at 70). On re-direct, Officer Martin identified the written citation issued by Officer Coverdale for failure to yield the right of way to a pedestrian (*id.* at 74–75).

Petitioner testified at the initial suppression hearing that Officer Coverdale initiated the traffic stop (by engaging his blue lights) before Petitioner approached the intersection with the crosswalk (*id.* at 80, 84). He testified that he stopped for the pedestrian, but the pedestrian waved him through the crosswalk, so he proceeded through the crosswalk (*id.* at 80–81). He testified that he pulled in the Circle K, and Officer Coverdale approached the vehicle and asked if he could search him (*id.* at 81). Petitioner testified that he stated, "no, sir, you can't search me, but just to prove to you I'm not a dangerous or a violent person, you can pat me down" (*id.* at 82). Petitioner testified that Coverdale asked him to exit the vehicle, so he did (*id.*). He testified that instead of patting him down, Officer Coverdale began reaching into his pockets (*id.*). Petitioner testified that he asked Coverdale why he was putting his hands in his pockets when he consented only to be patted down, not searched, but Coverdale disregarded Petitioner's question (*id.*). Petitioner testified that at that point he pulled away from Coverdale and told him he could not search him (*id.*). Petitioner testified that he ran around the other side of the vehicle, because he believed Coverdale was reaching for his

gun, and then stopped and laid down (*id.* at 83). He testified that the officers arrested and handcuffed him (*id.*). Petitioner testified that neither officer gave him a traffic citation (*id.*). On cross-examination, Petitioner testified that he did not see an open beer container in the vehicle, but it was possible that it could have been there (*id.* at 85).

Defense counsel argued that the evidence showed Petitioner was not guilty of either failure to yield to the pedestrian or improper display of the tag (*id.* at 86–88). Counsel argued that according to Florida law, as soon as the reason for the stop dissipated (upon Coverdale's being able to see the tag numbers under the lights of the convenience store), Petitioner should have been told he was free to go, instead of being further detained (*id.* at 88). Defense counsel further argued that although Petitioner consented to a pat down search, he withdrew his consent by pulling away from Officer Coverdale, at which point Coverdale was legally obligated to cease the search (*id.* at 88, 90–91).

The trial court determined that the original stop was valid, based upon the officers' testimony that they could not see the numbers on the tag because of the tinted windows and the time of night (*id.* at 92–93). The court further determined that Officer Coverdale legally approached Petitioner in the vehicle even after Coverdale determined that the tag was legitimate (*id.* at 89). The court determined that upon Coverdale's seeing the open container of alcohol in plain view, he had legal grounds to further detain and investigate (*id.* at 93). The court did not find Petitioner's testimony credible that he consented only to a pat-down search; nor did the court believe Petitioner's testimony that he pulled away from Coverdale when Coverdale <u>began</u> searching his pockets (*id.* at 94–95). The court found the officers' testimony credible that Petitioner pulled away after Coverdale already had the cocaine in his hand (*id.*). Based upon these findings, the court denied the motion to suppress (*id.*).

At the plea and sentencing hearing two months later, on June 22, 2005, defense counsel and Petitioner informed the court that Petitioner wished to supplement the motion to suppress with evidence that the traffic citations were invalid under Florida law because Officer Coverdale failed to deliver the citations to him the day they were issued, as required by Florida Statutes Section 318.14(2) (Petitioner stated the Traffic Division sent him copies of the citations six (6) months after they were issued), and Officer Coverdale failed to file the citations with the court within five (5)

days of the date of issuance, as required by Florida Statutes Section 316.650(3)(a) (the citations indicated they were issued on November 23, 2004, and filed on December 8, 2004) (*id.* at 120–25, 147–48). The court admitted into the record the citations and Petitioner's arrest report and considered the arguments of Petitioner and defense counsel as an amended motion to suppress (*id.* at 125, 147–49). The court denied the amended motion to suppress on the ground that the validity of the citations did not affect the validity of the traffic stop or the search (*id.* at 124–26).

The record establishes that Petitioner's challenge to the stop and search based upon the validity of the traffic citations was presented to the trial court at the plea and sentencing hearing in an amended motion to suppress. The trial court properly reaffirmed its ruling that the officers had legally sufficient grounds to stop Petitioner's vehicle (based upon their reasonable suspicion of traffic violations), continue the detention (upon observing the open container of alcohol), and search Petitioner (in light of his consent to the search of the vehicle and his person), despite the fact that the traffic citations themselves were subject to dismissal. Petitioner thus failed to show that he was prejudiced by counsel's failure to investigate the citations or challenge their validity at the initial suppression hearing. Therefore, the state court did not unreasonably apply <u>Strickland</u> in denying Petitioner's claim.

B.    <u>Ground Two: "Ineffective assistance of trial counsel—failed to object to inadmissible and invalid evidence."</u>

Petitioner contends defense counsel performed ineffectively by failing to object to admission of the traffic citations at the suppression hearing (Doc. 1 at 4).

Respondent concedes that Petitioner exhausted this claim in state court by presenting it in his Rule 3.850 motion and appealing the trial court's decision denying the claim (Doc. 26 at 6). Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Supreme Court law (*id.* at 11–13). Respondent contends the citations were not admitted into evidence at the suppression hearing; rather, the prosecutor allowed one of the officers to view it to assist him in answering defense counsel's question as to the statutory citation for the failure to yield infraction (*id.* at 12). Respondent further contends Florida Statutes Section 316.650(9) provides that traffic citations are inadmissible at "trial," but it does not prohibit their

admission at a pre-trial evidentiary hearing (*id.* at 12).[6]  Further, even if the citations were not admissible, the outcome of the suppression hearing would have been the same (*id.* at 13).

           1.        Clearly Established Supreme Court Law

The <u>Strickland</u> standard, the standard articulated by the Supreme Court as applicable to claims of ineffective assistance of counsel, is set forth *supra*.

           2.        Federal Review of State Court Decision

Petitioner raised this claim as Issue Two in his Rule 3.850 motion (Ex. F. at 5–7).  In the written opinion denying Petitioner's claim, the state court found as fact that Petitioner testified at the suppression hearing that Officer Coverdale did not issue him any traffic citations on the night of his arrest (*id.* at 64).  Therefore, the court was well aware that the citations were disputed (*id.*).  The state court reiterated that the validity of the traffic citations had no bearing on whether the officers properly stopped Petitioner (*id.*).  The court thus determined that even if trial counsel had objected to admission of the citations, and the citations had not been admitted, the court's findings as to the motion to suppress would have been the same (*id.*).  Therefore, the court concluded, Petitioner failed to demonstrate that his counsel acted deficiently or that he was prejudiced by counsel's failure to object (*id.*).

The state court's adjudication of this claim was not unreasonable.  Even if the citations were improperly admitted, the admission was harmless, since the trial court's denial of the motion to suppress rested upon the court's determination that the officers had sufficient cause to stop Petitioner's vehicle and detain him, and that Petitioner consented to the search.  Neither of these determinations rested upon or was affected by the validity of the traffic citations.  Therefore, the state court's determination that Petitioner failed to demonstrate he was prejudiced by counsel's failure to object to admission of the citations, assuming arguendo that they were admitted into evidence at the suppression hearing, was not unreasonable.[7]

---

    [6] Petitioner argued in his Rule 3.850 motion that the citations were inadmissible under Florida Statutes Section 316.650(8, 9) (Ex. F at 5).

    [7] It is unclear from the record of the suppression hearing whether the citations were actually admitted into evidence.  The prosecutor, Mr. Giraud, referred to one of the citations as State's Exhibit Number 1 "just for identification purposes" and asked Officer Martin if he recognized it (Ex. A at 74).  Officer Martin testified that he recognized it as the citation written by Officer Coverdale to Petitioner for failure to yield the right of way to a pedestrian (*id.* at 75–76).

C.    Ground Three: "Ineffective assistance of trial counsel—trial counsel failed to object to prosecutor's use of perjured testimony."

Petitioner contends defense counsel performed ineffectively by advising him that if the arresting officer testified at the suppression hearing that Petitioner violated any traffic laws or was charged with any such violations, counsel would object to such testimony as false, but counsel failed to make such an objection at the hearing (Doc. 1 at 5).

Respondent concedes that Petitioner exhausted this claim in state court by presenting it in his Rule 3.850 motion and appealing the trial court's decision denying the claim (Doc. 26 at 13). Respondent contends this claim is based upon Petitioner's continuing, mistaken belief that the validity of the traffic citations was critical to the validity of the stop and subsequent search (*id.* at 15). Respondent contends that regardless of whether the officer actually issued the citations to Petitioner, the officer testified in detail regarding the facts which led him to stop Petitioner and ask for consent to search him; and the trial court believed this testimony (*id.*). Respondent further contends that the state post-conviction court's determination, that even if the officer was incorrect in his recollections regarding issuance of the citations, counsel's objection to the testimony would not have affected the trial court's credibility determination, is entitled to deference (*id.*).

1.    Clearly Established Supreme Court Law

The Strickland standard, the standard articulated by the Supreme Court as applicable to claims of ineffective assistance of counsel, is set forth *supra*.

2.    Federal Review of State Court Decision

Petitioner raised this claim as Issue Three in his Rule 3.850 motion (Ex. F. at 8–14). In the written opinion denying Petitioner's claim, the state court determined that even if the officer was incorrect in his recollections regarding the issuance of the traffic citations, Petitioner failed to demonstrate that such a misstatement would be considered perjured testimony (*id.* at 64–65). The court further determined that it was doubtful that an objection by counsel on grounds of perjury

Shortly thereafter, the trial judge asked the parties whether they agreed that a copy of the citation could be placed in the court file "since you did it for ID only, Mr. Giraud, so we can get the original down to traffic?" (*id.* at 76). Mr. Giraud and defense counsel agreed to placement of the citation in the file (*id.*). At the plea and sentencing hearing, defense counsel presented the written citations to the court to support Petitioner's testimony as to the date the citation was issued, the date it was filed with the court, and other information written on the citations (*id.* at 120–25). The court entered the citations into the record for consideration in support of Petitioner's amended motion to suppress (*id.* at 125).

would have been successful, or that an objection would have altered the court's assessment of the officer's credibility (*id.* at 65). Therefore, Petitioner failed to demonstrate that counsel's failure to object was deficient or that he was prejudiced by the alleged deficiency (*id.*).

Initially, Petitioner has failed to show that counsel had a meritorious basis for objecting to Officer Coverdale's testimony on the ground that it was perjurious. The essential elements of the crime of perjury are the willful giving of false testimony under lawful oath on a material matter in a judicial proceeding with the intent that the testimony be taken as true, even though the witness knows that it is false. *See* Gordon v. State, 104 So. 2d 524, 530 (Fla. 1958); Shelton v. State, 26 So. 2d 444, 445 (Fla. 1946). Thus, one of the essential elements of perjury is that the person making the statement does not believe it to be true. Cohen v. State, 985 So. 2d 1207, 1209 (Fla. 3d DCA 2008). In the instant case, Officer Coverdale's testimony with regard to citations was the following:

> Q [by defense counsel]. . . . What statute was it that Mr. Knight was violating by the failure to field [sic]?
>
> A. I don't recall. It would be in the citation I wrote. I don't have a copy of that currently but he was cited for that offense.
> . . . .
> Q. And when you approached—and when you approached the driver's side window, what were your intentions at that point? What were you going to do?
>
> A. I asked Mr. Knight for his driver's license, checked for valid driver's license, upon which I saw an open container in the vehicle.
>
> Q. Right, right. But your intent—was your intent not to go ahead and write him the citations for the improper display of the tag and the failure to yield?
>
> A. Yes, sir. Going to cite him for the tag and the failure to yield, yes, sir.
> . . . .
> Q. And, Officer, what were the—you stated earlier there were two infractions that you issued, two citations. What were the two?
>
> A. I believe it was three in total. The two original were going to be the improperly displayed tag, failure to yield to a pedestrian in a crosswalk, and the third is going to be the open container.
>
> Q. And you did issue three citations?

A.  Yes, sir, as far as I can remember.

. . . .

Q [by the State].  Can you just look over your typed version real quick on the offense report.  Officer, is that a copy of your report?

A.  Yes.

Q.  And in that report did you list whether you issued citations or not?

A.  Yes, sir.

Q.  How many does it say you issued in that report?

A.  On the report it states I issued two citations, 1269-DUK and 1270-DUK.

. . . .

Q [by defense counsel].  Other than the citation numbers, that's all that was in the police report, and do you remember which—since there were just two, do you remember what they were for?

A.  No, sir, I do not.  I'm sure we have copies of those citations I would assume.

(Ex. A at 58–64).

The written citations are included in the state court record as part of the record of the plea and sentencing hearing on June 22, 2005 (*id.* at 147–48).  Citation No. 1269-DUK and Citation No. 1270-DUK are signed "P.O. M. Coverdale" and dated "11-23-04" (*id.*).

Petitioner submitted no evidence to the state court suggesting that Officer Coverdale knew that any of his testimony (that is, that he wrote a citation; he intended to cite Petitioner for an improperly displayed tag and failure to yield to a pedestrian in a crosswalk; he "believed" he issued three citations; "as far as [he] [could] remember" he issued three citations; his arrest report stated that he issued two citations; and he did not remember what the two citations were for) was false at the time he testified, on April 12, 2005.  Therefore, Petitioner failed to show that defense counsel had a meritorious basis for objecting to the testimony on the ground that it was perjurious.  Furthermore, even if counsel had impeached Officer Coverdale's testimony with evidence that he did not actually deliver either citation to Petitioner on the night he issued them (each citation indicates it was delivered to "ECJ" that night (*see* Ex. A at 147–48), Petitioner failed to establish

a reasonable probability that Coverdale's misstatement as to this fact would have caused the court to discredit the remainder of his testimony and grant the motion to suppress. Therefore, Petitioner has failed to demonstrate that the state court unreasonably applied <u>Strickland</u> in concluding that he failed to show either deficient performance or prejudice with regard to counsel's failure to object to the prosecutor's use of perjured testimony.

   D.    <u>Ground Four: "Ineffective assistance of counsel—trial counsel failed to file an adequate motion to suppress with specific facts to support an illegal search and illegal seizure."</u>

Petitioner contends defense counsel performed ineffectively by filing a "boilerplate" motion to suppress (Doc. 1 at 5). He contends counsel failed to argue that the pat down search was illegal because Petitioner was not dangerous and did not pose a threat to the officers (*id.*). He contends counsel also should have argued that the stop was pretextual (*id.*).

Respondent concedes that Petitioner exhausted this claim in state courts by presenting it in his Rule 3.850 motion and appealing the trial court's decision denying the claim (Doc. 26 at 16). Respondent contends the state court's denial of the claim was not based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of <u>Strickland</u> (*id.* at 16–19).

   1.    Clearly Established Supreme Court Law

The <u>Strickland</u> standard, the standard articulated by the Supreme Court as applicable to claims of ineffective assistance of counsel, is set forth *supra*.

   2.    Federal Review of State Court Decision

Petitioner raised this claim as Issue Four in his Rule 3.850 motion (Ex. F. at 14–22). In the written opinion denying Petitioner's claim, the state court determined that the motion to suppress was adequate (*id.* at 65). The court rejected Petitioner's argument that counsel should have argued that the stop was pretextual because (1) the traffic citations were invalid, and (2) Petitioner did not have an open alcoholic container in the vehicle. The court determined that the issue of the validity of the citations was ancillary to, and had no effect upon, the outcome of the suppression issue (*id.* at 65–66). Further, Petitioner's own testimony at the suppression hearing demonstrated that counsel would not have been able to make a good faith argument that there was no open container of alcohol,

since Petitioner admitted there "could have been" one in the vehicle (*id.* at 66). The court thus concluded that Petitioner failed to satisfy either prong on the <u>Strickland</u> standard with regard to counsel's failure to file a more specific motion to suppress (*id.*).

Initially, the transcript of the suppression hearing confirms that Petitioner admitted there was a "possibility" that an open beer container "could have been" in the vehicle (Ex. A at 85). Furthermore, as previously discussed, the officers had legally sufficient grounds to stop Petitioner's vehicle (based upon their reasonable suspicion of traffic violations), continue the detention (upon observing the open container of alcohol), and search Petitioner (in light of his consent to the search of the vehicle and his person), despite the fact that the traffic citations themselves were subject to dismissal. In light of Petitioner's failure to show that defense counsel's motion to suppress was inadequate, the state court's denial of his claim was not an unreasonable application of <u>Strickland</u>.

E.    <u>Ground Five: "Ineffective assistance of counsel—trial counsel misadvised the Appellant about entering a plea with erroneous information and deception."</u>

As his final ground for relief, Petitioner contends defense counsel misadvised him that he had no alternative than to plead nolo contendere because the motion to suppress was unsuccessful and the traffic citations were valid (Doc. 1 at 6).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 26 at 19–20). Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Supreme Court law (*id.* at 20–23).

1.    Clearly Established Supreme Court Law

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)). A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available. *See* <u>Henderson v. Morgan</u>, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976).

When a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the two pronged standard set forth in <u>Strickland</u> applies.  As previously discussed, the two components of an ineffectiveness claim under <u>Strickland</u> are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  <u>Strickland</u>, 466 U.S. at 697.  The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances."  *See* <u>Strickland</u>, 466 U.S. at 691.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

<u>McMann v. Richardson</u>, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

Furthermore, "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1152 (11th Cir. 1991) (citations omitted).  In a plea situation, counsel must provide advice "within the range of competence

demanded of attorneys in criminal cases." <u>Hill v. Lockhart</u>, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting <u>McMann</u>, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. <u>Stano</u>, 921 F.2d at 1150–51. Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan v. Dugger</u>, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the <u>Strickland</u> standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill</u>, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under <u>Strickland</u> for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial. *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer. *See* <u>Diaz</u>, 930 F.2d at 835; *see also* <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue Five in the supplement to his Rule 3.850 motion (Ex. F at 50–54). The state court found as fact that Petitioner was informed by the court at the plea and sentencing hearing that he had the right to proceed to trial, but he was giving up such a right if he decided to enter the plea (*id.* at 67–68). The state court determined that regardless of what defense counsel may have advised Petitioner before entering his plea, any "misadvice" was corrected by the trial court at the plea and sentencing hearing (*id.* at 68). Therefore, Petitioner failed to demonstrate he was prejudiced by counsel's alleged misadvice (specifically, that Petitioner could not go to trial because he lost at the suppression hearing, and Petitioner had no alternative than to enter a nolo contendere plea because of the validity of the traffic citations) (*id.* at 66–68).

Petitioner's claim, that counsel's advising him that he could not go to trial and had no choice but to plead nolo contendere caused him to unknowingly and involuntarily plead nolo contendere, is contradicted by Petitioner's statements during the plea colloquy that he understood he was giving up his right to make the State prove the case against him beyond a reasonable doubt, to put on evidence, to cross-examine evidence, to testify, to exercise his right to remain silent, and his right to appeal (with the exception of the suppression issue, ) (Ex. A at 126, 128–30, 138, 144). Petitioner additionally stated he was entering his plea freely and voluntarily (*id.* at 130). He stated he had not taken any substances in the past twenty-four hours that would affect his ability to understand what he was doing (*id.*). Although he stated he was unsatisfied with the services of defense counsel, after the court conducted an inquiry into Petitioner's reasons for his dissatisfaction (namely, that counsel failed to challenge the validity of the traffic citations as grounds for suppressing the cocaine found in his pocket) and determined that counsel did not perform deficiently with regard to the suppression issue, Petitioner stated he wished to proceed with counsel (*id.* at 130–37). The plea colloquy continued, and Petitioner stated that no one had promised him anything with regard to his sentence (*id.* at 137–38). He then stated he intended to enter a plea of nolo contendere (*id.* at 138).

Courts may reject a claim that a plea was invalid for ineffective assistance of counsel if such claim is contradicted by a petitioner's statements in the record. *See* Blackledge v. Allison, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("[R]epresentations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n. 8 ("[T]here is a strong presumption that the statements made during the [plea] colloquy are true."); Patel v. United States, 252 Fed. Appx. 970, 975 (11th Cir. 2007). In the instant case, Petitioner's statements during the plea colloquy that he understood he had the right to go to trial and was giving up that right by pleading nolo contendere contradict his claim that defense counsel advised him he could not go to trial. Therefore, Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was an unreasonable application of Strickland.

IV.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 7th day of September 2010.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**